UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MPHJ TECHNOLOGY INVESTMENTS,  :
LLC, inclusive of its         :
subsidiaries,                 :
                              :
        Plaintiff,            :
                              :
        v.                    :    Case No. 2:14-cv-191
                              :
WILLIAM H. SORRELL, in his    :
official capacity as          :
Attorney General of the       :
State of Vermont,             :
                              :
        Defendant.            :

## OPINION AND ORDER

This case revolves around the State of Vermont's enforcement efforts against Plaintiff MPHJ Technology Investments, LLC ("MPHJ") for alleged patent trolling.  The State claims that MPHJ, through shell subsidiaries, sent false and misleading letters to various Vermont entities alleging patent infringement and demanding the purchase of licenses.  In 2013, the State sued MPHJ in state court under the Vermont Consumer Protection Act, 9 V.S.A. §§ 2451 *et seq.* ("VCPA").  That case (the "State Action") is currently pending.[1]

In the instant case, MPHJ seeks to enjoin the State's enforcement activities, both present and future, including the State Action.  In addition to challenging the claims brought

_____

[1]  MPHJ has twice tried to remove the State Action to this Court. After the Court's second remand order, MPHJ appealed the remand to the United States Court of Appeals for the Second Circuit.  The Second Circuit has not yet issued a ruling in that appeal.

under the VCPA, MPHJ requests injunctive and declaratory relief with respect to the recently-enacted Bad Faith Assertions of Patent Infringement Act, 9 V.S.A. § 4195-4199 ("BFAPIA").  The State has not taken any enforcement action under the BFAPIA. MPHJ further accuses the State of selective prosecution and a taking with regard to its patent rights.

Now before the Court is a motion to dismiss filed by the Defendant, Vermont Attorney General William Sorrell.  ECF No. 19. The Attorney General argues that this case should be dismissed in its entirety on the basis of *Younger* abstention; that MPHJ lacks standing; that the claims are not ripe; that MPHJ has failed to state a claim for selective prosecution; and that any claim for damages, fees, or costs is barred by sovereign immunity.  For the reasons set forth below, the motion to dismiss is **granted** in part and **denied** in part.

**Factual and Procedural Background**

MPHJ owns several patents relating to networked scanning systems.  It contends that its patents are of the type that manufacturers of system components (such as servers, scanners, and desktops) will not be held liable for infringement, and that only end-users will be clear infringers.  MPHJ also claims that infringement by end-users can be reasonably suspected, but not confirmed, through public records.  To confirm infringement, a written inquiry is required.

MPHJ (or its subsidiaries) allegedly sent letters of inquiry to a series of Vermont businesses.  The first such letter would inform the suspected infringer that it had been identified as a user of patented technology, and required a response either confirming or denying infringement.  ECF No. 18-6.[2]  If MPHJ did not receive a response to the first letter, a law firm hired by MPHJ would send a second letter notifying the potential infringer that the matter had been referred to counsel "to work out a license with you," or to determine "whether additional steps might be required."  ECF No. 18-7 at 2.  If still no response, a third letter would issue from the law firm threatening legal action.  ECF No. 18-8.

The State of Vermont, through the Attorney General's office, undertook an investigation of MPHJ's communications with Vermont businesses.  Ultimately, the State filed suit against MPHJ alleging violations of the VCPA.  In support of its claims of unlawful trolling, the State alleged that no court had ruled on the validity of MPHJ's patents, that MPHJ did not possess exclusive licenses, and that the targeted businesses in Vermont were largely outside the geographic regions where enforcement of the patents was permitted.  The State also alleged that although

---

[2]  The letter described a likely-infringing system as "an office local area network ('LAN') which is in communication with a server, employee computers having email software such as Outlook or Lotus, and a third-party scanner (or multi-function printer with scanning functionality) which permits the scanning of a document directly to employee email address as a pdf attachment."  *Id* at 2.

MPHJ had threatened litigation, it had not retained local counsel or filed a single suit. Accordingly, the State's pleading accused MPHJ of sending the letters of inquiry in bad faith.

MPHJ now brings this federal suit against Attorney General Sorrell arguing, among other things, violations of its First Amendment rights. The First Amended Complaint consists of three Counts, each of which is divided into subparts. Count I focuses on MPHJ's intent to send letters in the future. In Count I-A, MPHJ claims that the BFAPIA is invalid or preempted under federal law, and seeks declaratory and injunctive relief barring any enforcement efforts under that statute. Count I-B alleges that the VCPA is invalid or preempted. Count I-C contends that Vermont's long arm statute is invalid as applied to MPHJ. Count I-D attacks the VPCA and the BFAPIA under the Dormant Commerce Clause, while Count I-E seeks a declaration that patent enforcement would not be baseless. Count I-F asks for costs and attorney's fees under 42 U.S.C. § 1988 on the basis of Defendant Sorrell's allegedly unconstitutional conduct.

Count II focuses on the State's enforcement against MPHJ's prior letters, and seeks to enjoin the State from enforcing compliance with the BFAPIA as a remedy. This Count is again broken into five supbarts, alleging preemption and unconstitutionality and requesting fees and costs. Count III alleges a taking in the form of interference with MPHJ's patent

4

rights.

The Attorney General has moved to dismiss, arguing that because of the ongoing State Action this Court should abstain from hearing MPHJ's claims.  *See generally Younger v. Harris*, 401 U.S. 37 (1971).  As mentioned above, the Attorney General further argues lack of standing, failure to state a claim, and sovereign immunity.  Also before the Court are MPHJ's motion for a preliminary injunction and motion to seal an exhibit.[3]

## Discussion

### I.   *Younger* Abstention

#### A.   Background

The Attorney General first argues for abstention under *Younger v. Harris*.  In *Younger*, the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate.  401 U.S. at 54; *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973).  "*Younger* abstention has been extended to civil proceedings and state administrative proceedings, so long as the state court has a means of reviewing constitutional claims." *Cecos International, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (citations omitted).  The doctrine applies to cases seeking

---

[3]  The preliminary injunction motion will be addressed in a separate Opinion and Order.

5

both injunctive and declaratory relief.  *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000).

The Second Circuit previously set forth a test for abstention under *Younger*, requiring (1) a pending state proceeding (2) that implicates an important state interest, and (3) that "the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."  *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003).  This three-part test was derived from the Supreme Court's opinion in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ("*Middlesex*").

The Supreme Court recently held, however, that *Younger* abstention is limited to three classes of parallel proceedings: (1) "pending state criminal proceeding[s]"; (2) "particular state civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013); *see id.* at 591 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope.").  In fashioning these categories, *Sprint* described the Supreme Court's previous applications of *Younger* to state civil proceedings as follows:

6

> Our decisions applying *Younger* to instances of civil
> enforcement have generally concerned state proceedings
> akin to a criminal prosecution in important respects.
> Such enforcement actions are characteristically
> initiated to sanction the federal plaintiff, *i.e.*, the
> party challenging the state action, for some wrongful
> act.  In cases of this genre, a state actor is
> routinely a party to the state proceeding and often
> initiates the action.  Investigations are commonly
> involved, often culminating in the filing of a formal
> complaint or charges.

134 S. Ct. at 584 (internal citations and quotation marks
omitted).

**B.   VCPA Claims**

Here, the Court finds that the State's enforcement of the
VCPA meets the *Sprint* criteria, and is consistent with the
Supreme Court's prior applications of *Younger*.  The State Action
seeks to impose civil penalties as sanctions for wrongful acts
involving alleged violations of Vermont's consumer protection
law.  Moreover, the State initiated the action after conducting
an investigation, thereby echoing the description of a proper
abstention scenario set forth in *Sprint*.

*Sprint* also noted that while the *Middlesex* factors are not
dispositive, they may be considered.  *Id.* at 593.  Here, the
first two *Middlesex* factors are satisfied since there is a
pending state proceeding that implicates the important state
interest of enforcing its consumer protection laws.  Indeed,
courts have widely held that state actions to enforce consumer
protection statutes are eligible for abstention under *Younger*.

*See, e.g., Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d
874, 880 (8th Cir. 2002); *Williams v. State of Washington*, 554
F.2d 369, 370 (9th Cir. 1977); *In re Standard and Poor's Rating
Agency Litig.*, 23 F. Supp. 2d 378, 409 (S.D.N.Y. 2014); *Bologna
v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 327 (E.D.N.Y. 2001).
With respect to the third *Middlesex* factor, the state courts will
provide MPHJ ample opportunity to present its federal
constitutional claims. *See Spargo*, 351 F.3d at 77 (("[I]n
conducting the *Younger* inquiry, considerations of comity
'preclude[ ] any presumption that the state courts will not
safeguard federal constitutional rights.'") (quoting *Middlesex*,
457 U.S. at 431)).  The Court will therefore abstain from hearing
MPHJ's current claims regarding the VCPA or enforcement thereof.

### C.    BFAPIA Claims

MPHJ's First Amended Complaint also presents challenges to
the BFAPIA.  This Court has previously found that the State
Action has nothing to do with the BFAPIA.  As there has been no
civil enforcement action under the BFAPIA, abstention with
respect to that statute is unwarranted.  *See, e.g., Sprint*, 134
S. Ct. at 593 (*Younger* abstention does not extend to "all
parallel state and federal proceedings").  Although MPHJ has
argued in the past that the State Action, as amended,
incorporates the BFAPIA, this Court will only abstain with
respect to matters that it has found are being actually asserted

8

by the Attorney General's office in state court.

### D.    MPHJ's Arguments Against Abstention

MPHJ argues that *Younger* cannot apply to Count I of its First Amended Complaint, which pertains only to its intent to send letters in the future.  The State Action, however, seeks injunctive and declaratory relief with regard to VCPA violations both past and future.  *See Vermont v. MPHJ*, No. 2:14-cv-192 (ECF No. 7 at 9).  It is therefore appropriate under *Younger* to leave those questions to the state courts.

MPHJ concedes that *Younger* may reach the Attorney General's enforcement efforts with regard to past letters, and in turn, MPHJ's as-applied challenge to the VCPA.  Nonetheless, MPHJ argues for application of various exceptions to the *Younger* doctrine.  Citing *Sprint*, MPHJ first contends that the State Action under the VCPA is not "akin to criminal prosecutions." *Id.*  As discussed above, *Sprint* set forth the characteristics of a proceeding that might qualify as "akin" to a criminal case, and the State Action conforms with those characteristics.  Indeed, "[t]he presumption against federal jurisdiction is especially strong in cases of this sort, involving States seeking to vindicate quasi-sovereign interests in enforcing state laws and protecting their own citizens from deceptive trade practices and the like."  *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 2d at 385.

MPHJ next contends that the State Action does not involve important state interests, but instead concerns enforcement of an exclusively federal matter: patent rights.  This Court was faced with a similar argument in its first remand order, and concluded that "[t]he [State Action] is premised solely on Vermont state law, not federal patent law, and none of the claims for relief concern the validity of MPHJ's patents."  *Vermont v. MPHJ Tech. Inv., LLC*, 2014 WL 1494009, at *4 (D. Vt. Apr. 15, 2014).  This conclusion carries over to the *Younger* analysis, as Vermont is seeking to protect its consumers and is not challenging MPHJ's patents.

MPHJ also asks the Court to consider irreparable harm if the State is allowed to enforce an unconstitutional statute.  MPHJ has brought constitutional and preemption challenges to the VCPA in the State Action.  The state courts can resolve those issues and provide remedies as appropriate.  *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.").

MPHJ further urges the Court to apply a bad faith exception.  "Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'"  *Diamond "D"*

*Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)

("*Diamond 'D'*") (quoting *Younger*, 401 U.S. at 54).  "Generally,

for such a showing to be made," a plaintiff must demonstrate that

the party bringing the state action had "no reasonable

expectation of obtaining a favorable outcome." *Cullen v.*

*Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).  The Second Circuit has

also noted that bad faith may include retaliation or an intent to

"deter constitutionally protected conduct." *Diamond "D"*, 282

F.3d at 199 (quoting *Cullen*, 18 F.3d at 103-04).

The bad faith exception will not apply if the enforcement

effort, while unconstitutional, is legitimate.

> A state proceeding that is legitimate in its purposes,
> but unconstitutional in its execution – even when the
> violations of constitutional rights are egregious –
> will not warrant the application of the bad faith
> exception. To invoke this exception, the federal
> plaintiff must show that the state proceeding was
> initiated with and is animated by a retaliatory,
> harassing, or other illegitimate motive.

*Id.*; *see also Younger*, 401 U.S. at 54 ("the possible

unconstitutionality of a statute 'on its face' does not itself

justify an injunction against good-faith attempts to enforce

it").  Indeed, the subjective bad faith of the prosecuting

authority is the gravamen of such an exception. *Kern v. Clark*,

331 F.3d 9, 12 (2d Cir. 2003).

MPHJ contends that the State's enforcement efforts are

intended to deter constitutionally protected conduct in the form

of its First Amendment right to send letters of inquiry.  MPHJ

11

also argues that the State has no reasonable expectation of success because it has failed to allege bad faith patent enforcement under *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("*Globetrotter*").  A review of the State's pleading, however, indicates that it has in fact alleged bad faith under the VCPA. *Vermont v. MPHJ*, No. 14-cv-192 (ECF No. 7 at 7).

The Attorney General's State Action to enforce the VCPA appears to be a "straightforward application" of Vermont's consumer protection statute, with no showing of "malevolent intent."  *Diamond "D"*, 282 F.3d  at 199-201.  The constitutionality of the statute being enforced can be determined by the state courts, and the State has alleged bad faith.  To the extent that MPHJ asserts allegations of malice or retaliation by the State, those claims lack supporting facts.[4]  This Court therefore finds that the bad faith exception does not apply. *Compare Cullen*, 18 F.3d at 104 (applying bad faith exception where parties had a "past history of personal conflict" and school board's action was "strictly *ad hominem*"), *with Schlagler v. Phillips*, 166 F.3d 439, 441 (2d Cir. 1999) (declining to apply bad faith exception where prosecutor had no malice toward

---

[4]  MPHJ cites an interview given by Attorney General Sorrell in which he discusses the State's efforts to battle patent trolling generally.  ECF No. 22-14.  Although Sorrell mentions MPHJ, there is no suggestion of either bad faith or retaliatory animus on the part of the Attorney General or his office.

defendant).

The unusual or extraordinary circumstances exception recognizes that "[t]here may . . . be extraordinary circumstances in which the necessary irreparable injury [warranting equitable intervention] can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger*, 401 U.S. at 53.  The Second Circuit has identified two predicates for application of this exception: "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Diamond "D"*, 282 F.3d at 201. Again, with respect to the VCPA claims, the state courts can fully address any constitutional questions and remedy any violations as appropriate.  MPHJ will not suffer great and immediate harm if this Court fails to intervene.

### E.   Scope of Abstention

In sum, the Court will abstain from hearing those portions of MPHJ's First Amended Complaint that directly overlap with the State Action, including challenges to the VCPA.  MPHJ's challenge to the state court's assertion of personal jurisdiction under the Vermont long arm statute is also a matter that is strictly for the state court to determine.  This Court's abstention does not include MPHJ's claims for money damages. *Rivers v. McLeod*, 252

13

F.3d 99, 101-02 (2d Cir. 2001) ("[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983 . . . ."); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 709 (S.D.N.Y. 2011).  Nor does the Court's abstention extend to MPHJ's claims under the BFAPIA, for selective prosecution, or its takings claim, as those claims are not a part of the State Action.[5]

## II.  Standing

The Attorney General further argues that because his office has made no effort to enforce the BFAPIA and has not threatened such enforcement, MPHJ lacks standing to challenge that statute. In order to have standing under Article III, a plaintiff must (1) "have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and (2) the injury be "fairly trace[able] to the challenged action of the defendant."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  The Attorney General focuses upon the third element, arguing that MPHJ cannot demonstrate an injury traceable to the BFAPIA.

It is undisputed that the State has not taken any action against MPHJ under the BFAPIA.  It is also undisputed that MPHJ

---

[5]  MPHJ's takings and selective prosecution claims face other impediments as discussed below.

14

stopped sending letters to Vermont in February 2013, prior to the passage of the BFAPIA.  The Attorney General therefore contends that there is currently nothing to enforce under the BFAPIA, and that any suggestion of potential enforcement is speculative and "conjectural."  *Lujan*, 504 U.S. at 560-61.

MPHJ responds that when a constitutional injury is alleged, and specifically an injury under the First Amendment, that injury is established by a credible threat of prosecution.  *See Susan B. Anthony List v. Driehaus*, 134 S. Ct 2334, 2342 (2014).  *Driehaus,* citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979), set forth three factors supporting its finding of a credible threat: (1) the plaintiffs alleged an intention to engage in a course of conduct arguably involving a constitutional interest; (2) the plaintiffs' conduct was arguably proscribed by the challenged statute; and (3) the threat of future enforcement was substantial.  134 S. Ct. at 2344-45; *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (concluding that standing is met where "plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them").

MPHJ meets the first factor, as it has made plain its intention to send enforcement letters in the future.  An example of such a letter is attached to its pleadings.  ECF No. 18-13. The parties dispute whether the proposed letters would be proscribed, with the Attorney General contending that the sample

15

letter does not threaten a lawsuit, is materially different from those sent by MPHJ and its subsidiaries previously, and would not violate the BFAPIA.  MPHJ notes that, as with the letters sent prior to passage of the BFAPIA, the proposed letters would be followed by letters from legal counsel threatening further action.  Such follow-up letters are not merely hypothetical or conjectural, but would be consistent with MPHJ's past practices.

With regard to the third factor, the question concerns the level of threat.  The Second Circuit has explained that the "credible threat of prosecution" standard is a "more permissive" standard for imminence than "certainly impending," or perhaps even "substantial risk."  *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013).  To satisfy that standard, a plaintiff need not demonstrate that a prosecution is about to occur, but merely that the plaintiff's "'fear of [civil] prosecution . . . is not imaginary or wholly speculative.'" *Id.* (quoting *Babbitt*, 442 U.S. at 302).

Here, MPHJ has come forward with evidence of an interview in which the Attorney General discussed a new piece of legislation, the BFAPIA, intended to deter patent trolling in Vermont.  In the course of that interview, the Attorney General mentioned MPHJ specifically.  He explained that his office's suit against MPHJ was brought under the VCPA, but that the BFAPIA is now "another arrow in the quiver for my office to protect Vermont businesses."

16

ECF No. 22-14 at 3.  Given the Attorney General's statements, future enforcement under the BFAPIA seems neither conjectural nor hypothetical.[6]

Furthermore, the lack of a specific threat to enforce the BFAPIA does not deny MPHJ standing.  In *Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000), state officials tried to preclude a pre-enforcement challenge to a campaign finance law because the State reportedly had no intention to enforce the statute against the plaintiff.  The Second Circuit rejected the State's position, concluding that "there is nothing to prevent the State from changing its mind." *Id.*  More recently, the Second Circuit explained that the Supreme Court's approach in these cases is "forgiving" because it presumes the government will enforce the law.  *Hedges*, 724 F.3d at 197.  The Court therefore finds that MPHJ has shown a credible threat of enforcement, and that it has standing to challenge the BFAPIA.

## III. Ripeness

The Attorney General further argues that even if MPHJ can show standing, its claims are not ripe or otherwise justiciable.

_____

[6] As to the question of whether the Attorney General's interview is properly before the Court on the motion to dismiss, the Supreme Court has acknowledged a district court's right to request supplementation of the record on the question of standing.  *Warth v. Seldin*, 422 U.S. 490, 501–502 (1975) (explaining that a court may "allow or [r]equire" a plaintiff to supplement the record to show standing).

The standards for standing and ripeness are quite similar.  *See New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.") (internal quotation marks and alterations omitted).  "'If a plaintiff has not yet suffered a concrete injury-in-fact, he or she lacks standing, even though it is possible that in the future such an injury will occur.  Yet such a suit could also be said to suffer from a lack of ripeness because the circumstances have not yet developed to the point where the court can be assured that a live controversy exists.'" *Brennan v. Nassau Cnty.*, 352 F.3d 60, 65 n.9 (2d Cir. 2003) (per curiam) (quoting 15 James Wm. Moore, Moore's Federal Practice § 101.71 (3d ed. 2003)).  The Second Circuit has ruled that when considering pre-enforcement First Amendment claims, the rules for ripeness are "somewhat relaxed."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

The Attorney General argues that MPHJ's claims are not ripe because its proposed letter of inquiry does not violate the BFAPIA.  As discussed above, MPHJ's practice is to send a series of letters if it receives no response from a potential infringer.  MPHJ claims that because the follow-up letters would suggest or explicitly threaten litigation, they arguably violate the BFAPIA.

18

The Attorney General also submits that MPHJ has not adequately alleged a reasonable suspicion of infringement activity in Vermont. To rebut this contention, MPHJ has submitted a declaration from information technology specialist Saul Acevedo. ECF No. 22-16. Mr. Acevedo attests that, based upon his expertise, several companies in Vermont are infringing upon MPHJ patents. Under the "somewhat relaxed" ripeness standard in a case such as this, the Court finds that Mr. Acevedo's declaration makes the showing required for ripeness. *Walsh*, 714 F.3d at 689.

MPHJ's takings claims, however, requires more. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that a takings claim brought in federal court is not ripe until the party seeking compensation pursues the procedures provided under state law. 473 U.S. 172 (1985). The Supreme Court reasoned that since the Fifth Amendment does not require that just compensation "be paid in advance of, or contemporaneously with, the taking," the State's action is not "complete" until the party seeking compensation has exhausted any available "reasonable and adequate provision[s] for obtaining compensation after the taking." *Id.* at 195; *see also Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109 (2d Cir. 2009) ("[a] takings claim is not ripe if a remedy potentially is available under the state constitution's

19

provision").[7]

The Second Circuit has determined that "Vermont has an adequate procedure that [plaintiff] must use – a suit in state court – before it asserts a section 1983 claim based upon a regulatory taking." *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 100 (2d Cir. 1992).[8]  Indeed, under the Vermont Constitution, "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." Vt. Const. ch. 1 art. 2.  Therefore, if MPHJ's First Amendment rights are being chilled, and it believes that chilling constitutes a taking, a remedy should first be sought in the state court.

Also, the Court will not adjudicate the question of personal jurisdiction with regard to BFAPIA enforcement.  Personal jurisdiction is "fact specific and must necessarily be tailored to the circumstances of each case." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996).  If and when the State decides to enforce the BFAPIA, MPHJ's contacts

---

[7]  Even a facial challenge alleging a violation of the Takings Clause faces an "uphill battle," since it is difficult to assess economic harm by the mere enactment of legislation.  *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997).

[8] Moreover, to the extent that MPHJ is seeking damages under the Takings Clause, its claim against the Attorney General in his official capacity is barred by the Eleventh Amendment.  *See Hutto v. South Carolina Retirement Sys.*, 773 F.3d 536, 553 (4th Cir. 2014) ("[W]e note that every other court of appeals to have decided the question has held that the Takings Clause does not override the Eleventh Amendment.").

with the State of Vermont will be determined at that time.  To
consider contacts before they occur would require a fact-specific
analysis of the hypothetical.  The Court declines to engage in
such an exercise.

The Court therefore finds that MPHJ's claims under the
BFAPIA are ripe, while its takings and personal jurisdiction
claims are not.  Those claims are therefore **dismissed** without
prejudice.

## IV.   Failure to State a Claim: the BFAPIA

### A.   As-Applied and Facial Challenges

MPHJ alleges that the BFAPIA, both facially and as-applied,
is invalid or preempted under the First, Fifth, and Fourteenth
Amendments, the Supremacy Clause, the Patent Clause, and the
Dormant Commerce Clause.  The State moves to dismiss, arguing
that MPHJ has failed to state a claim.  The State's first
argument is that MPHJ cannot bring an as-applied challenge to the
BFAPIA pre-enforcement.  For reasons set forth above with respect
to standing and ripeness, the Court finds that MPHJ has shown a
sufficient threat of enforcement to survive the motion to dismiss
with regard to an as-applied challenge.  *See, e.g., Holder v.
Humanitarian Law Project*, 561 U.S. 1, 15-16 (2010).

"A pre-enforcement *facial* challenge to a law is generally
fit for review as of the law's enactment."  *Alliance of Auto.
Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 47 (D. Conn. 2013)

(emphasis added) (citing *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997)).  Facial challenges are largely disfavored, but allowed when a plaintiff asserts a First Amendment violation.  *Dickerson v. Napolitano*, 604 F.3d 732, 741–42 (2d Cir. 2010).  The Second Circuit permits such a challenge "only after concluding that 'the law is "permeated" with vagueness, and, perhaps, that it infringes on a constitutional right and has no *mens rea* requirement.'"  *Id*. at 744 (quoting *United States v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003)).

MPHJ claims that the BFAPIA infringes upon a constitutional right.  MPHJ also alleges that the statute gives too much discretion to the state court, while failing to put a patent owner on sufficient notice of what might violate the law.  Finally, MPHJ asserts that the BFAPIA does not include the pleading and proof requirements set forth in *Globetrotter*, and is therefore unlawful in all applications.  While these issues will undoubtedly be addressed in greater detail in future briefing, for present purposes the Court need only find that MPHJ has stated a plausible claim.  MPHJ has alleged sufficient facts to support a justiciable facial challenge to the BFAPIA, and that challenge will be allowed to proceed beyond this initial stage.

### B.   Dormant Commerce Clause

In Count I(D), MPHJ alleges violations of the Dormant

22

Commerce Clause.   The Commerce Clause provides Congress the
power to regulate commerce between the states.   In addition to
this express grant of power to the federal government, the
Commerce Clause contains a negative implication, known as the
Dormant Commerce Clause, "which limits the power of local
governments to enact laws affecting interstate commerce." *Town
of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir.
2007).   The primary concern of the Dormant Commerce Clause is
economic protectionism: "regulatory measures designed to benefit
in-state economic interests by burdening out-of-state
competitors." *McBurney v. Young*, 133 S. Ct. 1709, 1719 (2013)
(internal quotations omitted).

    "The Commerce Clause does not invalidate all State
restrictions on commerce." *Selevan v. New York Thruway Auth.*,
584 F.3d 82, 90 (2d Cir. 2009).   In fact, "the states retain
authority under their general police powers to regulate matters
of 'legitimate local concern,' even though interstate commerce
may be affected." *Maine v. Taylor*, 477 U.S. 131, 138 (1986).
Regulation of consumer protection is historically a matter of
legitimate local concern.   *Florida Lime & Avocado Growers, Inc.
v. Paul*, 373 U.S. 132, 135 (1963); *Cliff v. Payco General
American Credits, Inc.*, 363 F.3d 1113, 1125 (11th Cir. 2004).

    Under the Dormant Commerce Clause, "[a] regulation that
evinces discriminatory purpose against interstate commerce, or

23

unambiguously discriminates in its effect . . . almost always is invalid *per se*." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 431 (2d Cir. 2013) (internal quotation marks and citation omitted). MPHJ claims that the BFAPIA protects Vermont businesses from patent infringement claims more favorably than out of state businesses, and "unlawfully discriminates against patent owners seeking to enforce their patents against Vermont infringing businesses." ECF No. 18 at 31-32. MPHJ does not claim that the BFAPIA discriminates between in-state and out-of-state patent holders, or that it favors intrastate commerce over interstate commerce.

Even if facially neutral, a state statute may violate the Dormant Commerce Clause if "it imposes a burden on interstate commerce incommensurate with the local benefits secured." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 108 (2d Cir. 2001). In such a case, the so-called *Pike* balancing test guides the analysis. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "For a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Sorrell*, 272 F.3d at 109 (citations omitted). Where "no such unequal burden [is] shown, a reviewing court need not proceed further." *Sorrell*, 272 F.3d at 109.

Here, there is no allegation of either a qualitative or quantitative difference.  Vermont has passed a statute intended to protect its businesses and citizens from patent trolling by both in-state and out-of-state patent-holders.  There is no suggestion of protectionism, as the State has not acted to favor Vermont businesses over its competitors.  *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) ("Both an instate interest and an out-of-state competitor are necessary because laws that draw distinctions between entities that are not competitors do not 'discriminate' for purposes of the dormant Commerce Clause.").  Mere consumer protection does not run afoul of the Dormant Commerce Clause.  *See, e.g., SPGGC v. Blumenthal*, 505 F.3d 183, 194 (2d Cir. 2007).  MPHJ's Dormant Commerce Clause claim is therefore **dismissed**.

### C.   Selective Prosecution

The Attorney General next moves to dismiss MPHJ's selective prosecution claim.  MPHJ alleges that it is being targeted because it does not manufacture or sell products covered by its patents.  MPHJ also notes that the BFAPIA differentiates among types of patent owners, treating entities as such as universities more favorably.  The Attorney General argues that these facts fail to state a claim of selective prosecution in violation of the Equal Protection Clause.

The Equal Protection Clause prohibits "selective adverse

25

treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). Additionally, a plaintiff may assert "a 'class of one' selective treatment claim without asserting membership in a protected class," but, to be successful, the plaintiff "must demonstrate, *inter alia*, that the defendant [ ] intentionally treated [it] differently from others similarly situated without any rational basis." *Price v. City of New York*, 264 F. App'x 66, 68 (2d Cir. 2008) (citing *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001)).

MPHJ does not allege that it is part of a protected class or that it is being punished for exercising constitutional rights. As discussed above, any allegations of bad faith are unsupported and not plausibly pled. MPHJ also fails to allege different treatment by the State of Vermont as compared to similarly situated patent holders. MPHJ has therefore failed to plead a plausible claim of selective enforcement, and any such claim is **dismissed.**

## V.    Fees and Costs

The Attorney General's final argument is that fees and costs

under Section 1988 are barred by Vermont's sovereign immunity, as applied through the Eleventh Amendment. In *Missouri v. Jenkins*, 491 U.S. 274 (1989), the Supreme Court held that the Eleventh Amendment does not prohibit an award of fees against a state. This holding was based upon *Hutto v. Finney*, 437 U.S. 678 (1978), wherein attorney fees "were held to be 'costs' not subject to Eleventh Amendment strictures." *Jenkins*, 491 U.S. at 281, n.3. The Attorney General's motion to dismiss MPHJ's prayer for fees and costs is therefore **denied.**

## VI.  Motion to Seal

MPHJ has moved the Court to seal an exhibit to the Acevedo affidavit.  The exhibit in question identifies companies in Vermont that MPHJ suspects of infringing its patents.  While Acevedo refers to those businesses as companies 1-6, the exhibit identifies them by name.  The Attorney General opposes sealing the exhibit, arguing that MPHJ has failed to meet the legal standard for sealing an exhibit from public view.

In its reply memorandum, MPHJ offers a compromise approach, pursuant to which it would replace the current exhibit with an exhibit that only identifies the potential infringers by number, as in the Acevedo declaration.  The new exhibit would not need to be sealed.

The purpose of the exhibit is to demonstrate that MPHJ has actual, and not merely hypothetical, potential infringers.  This

27

purpose can be served without identifying the companies by name. The addresses of those companies should also be excluded. Accordingly, MPHJ may replace the current exhibit with the proposed exhibit, and the motion to seal is **denied** as moot.

## Conclusion

For the reasons set forth above, the Attorney General's motion to dismiss (ECF Nos. 13, 19) is **granted** in part and **denied** in part. Specifically, claims pertaining to the VCPA and the state court's use of Vermont's long arm statute to assert personal jurisdiction are **dismissed** without prejudice on the basis of abstention. MPHJ's takings and personal jurisdiction claims here are **dismissed** as unripe. MPHJ's Dormant Commerce Clause and selective prosecution claims are **dismissed** for failure to state a claim. MPHJ's motion to seal (ECF No. 23) is **denied** as moot, and the Clerk of Court shall permit MPHJ to replace ECF No. 22-18 with a new exhibit.

Dated at Burlington, in the District of Vermont, this 3rd day of June, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

28